1  ARNOLDO CASILLAS, ESQ., SBN 158519
   DENISSE O. GASTÉLUM, ESQ., SBN 282771
2  **CASILLAS & ASSOCIATES**
3  3777 Long Beach Blvd., Third Floor
   Long Beach, CA 90807
4  Tel:  (562) 203-3030
   Fax: (323) 297-2833
5  Email: acasillas@casillaslegal.com
6         dgastelum@casillaslegal.com

7
   Attorneys for Plaintiffs, ESTATE OF JOSE MENDEZ, by and through successors in
8  interest, Juan Mendez and Josefina Mendez; JUAN MENDEZ, individually;
9  JOSEFINA MENDEZ, individually

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12
13 ESTATE OF JOSE MENDEZ, by and ) **CASE NO.  CV 17-00227 JAK (ASx)**
   through successors in interest, Juan  )
14 Mendez and Josefina Mendez; JUAN )  **FIRST AMENDED COMPLAINT FOR**
   MENDEZ, individually; JOSEFINA )  **DAMAGES**
15 MENDEZ, individually;             )
                                     )    1. Excessive Force/Unreasonable
16                                   )       Seizure (42 U.S.C. § 1983)
                Plaintiffs,          )    2. Municipal Liability for
17                                   )       Unconstitutional Customs and
18  vs.                              )       Practices (42 U.S.C. § 1983)
                                     )    3. Interference with Familial Integrity
19 CITY OF LOS ANGELES; LOS         )       Substantive Due Process Violation
20 ANGELES POLICE DEPARTMENT; )           (42 U.S.C. § 1983)
   JOSUE MERIDA; JEREMY              )    4. Assault & Battery
21 WAGNER, and DOES 1 to 10,         )    5. Wrongful Death
                                     )    6. Civil Rights Violations (Cal. Civ.
22              Defendants.          )       Code §52.1)
                                     )
23                                   )
                                     )
24 _____       )
25                                       **DEMAND FOR JURY TRIAL**
   ///
26
   ///
27
28

---
                              1
_____
**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs ESTATE OF JOSE MENDEZ, by and through successors in interest, Juan Mendez and Josefina Mendez, JUAN MENDEZ, individually, and JOSEFINA MENDEZ, individually, and allege as follows:

**INTRODUCTION**

1.     This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Jose Mendez by Officer Josue Merida and Officer Jeremy Wagner of the Los Angeles Police Department. This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution in connection with the killing of Jose Mendez on or about February 6, 2016.

2.     Jose Mendez was a 16-year-old boy who found himself in troubling times, but who always maintained a sense of curiosity and playfulness.  He shared a deep love with his parents.  Jose's death has been a profound and unimaginable loss to his parents, the present Plaintiffs.

3.     Without justification or cause, Defendants Officer Josue Merida and Officer Jeremy Wagner shot and killed Jose as Jose attempted to exit a vehicle in compliance with the officers' orders.  This shooting was absolutely unjustified and it is Plaintiffs' goal to show that the killing of Jose was a senseless and unwarranted act of police abuse.

**JURISDICTION AND VENUE**

4.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

///

///

///

2

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Los Angeles, California.

6.     With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

7.     Decedent Jose Mendez was a minor residing in the Los Angeles, California.

8.     The claims made by the ESTATE OF JOSE MENDEZ, are brought by Juan Mendez and Josefina Mendez, the successors in interest to the Estate of Jose Mendez pursuant to California Code of Civil Procedure § 377.32.

9.     Plaintiffs JUAN MENDEZ and JOSEFINA MENDEZ, are and were, at all times relevant hereto, the natural father and mother of decedent Jose Mendez.

10.     Defendant CITY OF LOS ANGELES (hereinafter "LOS ANGELES") is and was, at all relevant times hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued.  Defendant LOS ANGELES is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies.  LOS ANGELES owns, operates, manages, directs and controls Defendant LOS ANGELES POLICE DEPARTMENT (hereinafter also "LAPD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant LOS ANGELES was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LAPD employees, complied with the laws and the Constitutions of the United States and of the State of California.

///

///

3

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

11.     Defendant Officer JOSUE MERIDA (hereinafter "MERIDA") is a police officer working for the Los Angeles Police Department.  Defendant MERIDA is sued in his official and individual capacity.   At all times relevant to the present action, Defendant MERIDA was acting under the color of law, to wit, under the color of the ordinances, regulations, policies, customs, and usages of Defendant LOS ANGELES, as well as under the color of the statutes and regulations of the State of California.

12.     Defendant Officer JEREMY WAGNER (hereinafter "WAGNER") is a police officer working for the Los Angeles Police Department.  Defendant WAGNER is sued in his official and individual capacity.   At all times relevant to the present action, Defendant WAGNER was acting under the color of law, to wit, under the color of the ordinances, regulations, policies, customs, and usages of Defendant LOS ANGELES, as well as under the color of the statutes and regulations of the State of California.

13.     At all relevant times, each of DOES 1 through 10 were employees of the LAPD. At all times relevant herein, each of DOES 1 through 10 was an employee and/or agent of Defendant LOS ANGELES and he or she acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant LOS ANGELES and the LAPD, as well as under the color of the statutes and regulations of the State of California.

14.     At all relevant times, each of the Defendants DOES 1 through 10 was acting within his or her capacity as an employee, agent, representative and/or servant of LOS ANGELES and is sued in their individual capacities.

15.     On information and belief, at all relevant times, Defendants MERIDA and WAGNER, and DOES 1 through 10, inclusive, were residents of the City of Los Angeles, California.

///

///

4

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

16.     The true names of Defendants DOES 1 through 10, inclusive, are
unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names.
Plaintiffs will seek leave to amend this Complaint to show the true names and
capacities of these Defendants when they have been ascertained. Each of the
fictitiously named Defendants is responsible in some manner for the conduct and
liabilities alleged herein.

17.     Defendants DOES 6 through 10 were also duly appointed police officers,
sergeants, lieutenants, detectives, or other supervisors, officials, executives and/or
policymakers of LAPD, a department and subdivision of Defendant LOS ANGELES,
and at all times mentioned herein said Defendants were acting in the course and scope
of their employment with Defendant LOS ANGELES, which is liable under the
doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

18.     Defendants DOES 1 through 3 are supervisorial employees for
Defendant LOS ANGELES who were acting under color of law within the course and
scope of their duties as police officers for Defendant LOS ANGELES. Defendants
DOES 1 through 3 were acting with the complete authority and ratification of their
principal, Defendant LOS ANGELES.

19.     Defendants DOES 4 through 10 are managerial, supervisorial, and
policymaking employees of Defendant LOS ANGELES, who were acting under color
of law within the course and scope of their duties as managerial, supervisorial, and
policymaking employees for Defendant LOS ANGELES. Defendants DOES 9 and 10
were acting with the complete authority and ratification of their principal, Defendant
LOS ANGELES.

20.     Each of the Defendants caused and is responsible for the unlawful
conduct and resulting by, inter alia, personally participating in the conduct, or acting
jointly and in concert with others who did so; by authorizing, acquiescing or failing to
take action to prevent the unlawful conduct; by promulgating policies and procedures

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  pursuant to which the unlawful conduct occurred; by failing and refusing, with

2  deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate

3  supervision and/or training; and, by ratifying the unlawful conduct that occurred by

4  agents and peace officers under their direction and control.  Whenever and wherever

5  reference is made in this Complaint to any act by a Defendant, such allegation and

6  reference shall also be deemed to mean the acts and failures to act of each Defendant

7  individually, jointly and severally. They are sued in their individual and official

8  capacities and in some manner are responsible for the acts and omissions alleged

9  herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such

10  name and responsibility when that information is ascertained.  Each of the

11  Defendants is the agent of the other.

12  **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

13       21.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set

14  forth herein.

15       22.     Jose Mendez was born on September 25, 1999, and was only 16 years

16  old at the time of his death.  He was of diminutive stature: five-foot-one and weighed

17  115 pounds, and appeared to be a child.  He was in good health.

18       23.     On or about February 6, 2015, at approximately 10:45 p.m., Jose

19  Mendez was driving a vehicle along Lorena Street in the Boyle Heights district of

20  Los Angeles.  Officer MERIDA and Officer WAGNER observed Jose Mendez

21  traveling along Lorena Street, and proceeded to conduct a traffic stop.  Jose Mendez

22  pulled over slowly and pulled into the driveway of a residence on East 6th Street.

23       24.     Jose Mendez sat in the driver's seat of the vehicle after coming to a stop.

24  Thereafter, Officer MERIDA and Officer WAGNER ran toward the vehicle and fired

25  their firearms repeatedly at Jose Mendez, striking him in the side of the head, his

26  back, chest and legs.   Officers MERIDA and WAGNER did not issue any commands

27  prior to shooting at JOSE MENDEZ.

28  ///

6

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

25.     Officers MERIDA and WAGNER shot repeatedly at JOSE MENDEZ, causing him to suffer 19 gunshot wounds.

26.     After shooting and killing JOSE MENDEZ, Officers MERIDA and WAGNER removed the body of JOSE MENDEZ from the car; this, in violation of the law and contrary to LAPD policies.  They cut the seat belt still worn by JOSE MENDEZ then dragged his body from the vehicle and placed the body on the sidewalk approximately 30 feet away from the vehicle.

27.     Officer MERIDA and Officer WAGNER searched the vehicle and "found" a sawed off shotgun concealed underneath the front passenger's seat.

28.     Defendants MERIDA and WAGNER killed Jose Mendez without justification. The shooting and killing of Jose Mendez was without provocation, cause or necessity as Jose Mendez did not pose a threat or represent a danger of any nature to anyone, including Defendants MERIDA and WAGNER, at the time of the shooting.  Jose Mendez was attempting to comply with the orders and commands of Defendants MERIDA and WAGNER at the time he was shot in the face, back, chest and legs 19 times by Defendants MERIDA and WAGNER. Accordingly, the shooting and killing of Jose Mendez was unjustified and this use of force was unwarranted and excessive under the circumstances.

29.     Officers MERIDA and WAGNER have been involved in multiple on-duty shootings.  In addition to the present shooting, officer WAGNER was involved in a shooting in 2010 and 2014.   Officer MERIDA was involved in the same shooting in 2014.

30.     Defendants LOS ANGELES and the LAPD were long aware of the propensity of their police officers, including Defendants MERIDA and WAGNER, to callously and recklessly use excessive force against members of the public, particularly targeting minority groups, and to engage in deceitful misconduct.  The

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

following incidents illustrate the use of excessive deadly force, all of which are pursuant to these unconstitutional customs, policies and practices of the LAPD:

a.      On February 3, 2007, six LAPD officers used excessive force against Mauricio Cornejo when the officers severely beat Mauricio Cornejo after he fled a traffic stop.  At the time of the beating, Mauricio Cornejo was unarmed and posed no threat of death or serious bodily injury to the officers or to anyone else.  The LAPD officers were not disciplined or required to undergo any retraining as a result of their use of deadly force against Mauricio Cornejo.  LOS ANGELES concluded that the use of force against Mauricio Cornejo was justified and that it was within and consistent with LAPD policy.

b.      On January 14, 2011, LAPD Officer Aaron Goff used excessive force when he shot and killed Reginald Doucet, Jr. At the time of the shooting, Reginald Doucet, Jr. was unarmed, naked and experiencing a psychotic episode. Officer Goff shot Reginald Doucet, Jr. twice in the back. LAPD Officer Goff was not disciplined or required to undergo any retraining as a result of his use of deadly force against Reginald Doucet, Jr.  LOS ANGELES concluded that the use of force against Reginald Doucet, Jr. was justified and that it was within and consistent with LAPD policy.

c.      On May 10, 2011, LAPD Officer Arthur Gamboa used excessive force when he shot and killed Anthony Garrett. Officer Gamboa shot Arthur Garrett twice in the back.  Although the Board of Police Commissioners determined that the pre-shooting tactics and shooting were outside department policy, Officer Gamboa was not disciplined or required to undergo any retraining as a result of his use of excessive deadly force against Arthur Garrett.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

d.    On July 22, 2011, LAPD Officer Fernando Ortega used excessive force against Maria del Carmen Ruvalcaba when he shot and killed Maria del Carmen Ruvalcaba in her home. At the time that Officer Ortega fired, Maria del Carmen Ruvalcaba was unarmed and posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. Officer Ortega was not disciplined or required to undergo any retraining as a result of his use of deadly force against Maria del Carmen Ruvalcaba. LOS ANGELES concluded that the shooting of Maria del Carmen Ruvalcaba by Officer Ortega was justified and that it was within and consistent with LAPD policy.

e.    On February 2, 2013, LAPD officers used excessive force against Sergio Pina. Sergio Pina was shot multiple times although he was unarmed and posed no threat of death or serious bodily injury to the officers or any other person at the time that he was shot. None of the officers involved in the shooting of Sergio Pina were disciplined or required to undergo any re-training as a result of their use of excessive deadly force against Sergio Pina.  LOS ANGELES declared the shooting of Sergio Pina was justified and that it was within and consistent with LAPD policy.

f.    On March 19, 2013, LAPD Officers Gerald Adams, Houston Stauber, Alfredo Morales and Shaun Hillman used excessive force against David Martinez when they shot him multiple times, killing him. At the time of the officers' use of excessive deadly force, David Martinez was unarmed, was running away from the officers, and posed no threat of death or serious bodily injury to the officers or any other person. None of the officers involved in the shooting of David Martinez were disciplined or required to undergo any re-training as a result of their use of excessive deadly force. LOS ANGELES declared the shooting of

9

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

David Martinez to be justified and that it was within and consistent with LAPD policy.

g. On March 5, 2015, LAPD Officer Brian Van Gorden used excessive force against Sergio Navas when he shot and killed Sergio Navas. Officer Van Gorden and Sergio Navas were engaged in a vehicle pursuit which ended in Officer Van Gorden shooting and killing Sergio Navas. At the time that Officer Van Gorden fired, Sergio Navas was unarmed and posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics and shooting were outside department policy.

h. On May 5, 2015, LAPD Officer Clifford Proctor used excessive force against Brendon Glenn when he shot and killed Brendon Glenn. Officer Proctor and Brendon Glenn were engaged in an altercation which ended in Officer Proctor shooting and killing Brendon Glenn. At the time that Officer Proctor fired, Brendon Glenn was unarmed and posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics and shooting were outside department policy.

i. In 2016, the Board of Police Commissioners required the LAPD to reevaluate its excessive force policies in an effort to reduce the number of police shooting by revamping department policies, revising training and emphasizing the use of less-lethal devices.

///
///
///
///

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## **FIRST CLAIM FOR RELIEF**

### **Excessive Force/Unreasonable Seizure**

### **42 U.S.C. § 1983**

### **As Against Defendants JOSUE MERIDA, JEREMY WAGNER**

### **and DOES 1 through 10**

31.    Plaintiff ESTATE OF JOSE MENDEZ realleges and incorporates the foregoing paragraphs as if set forth herein.

32.    Defendants MERIDA and WAGNER's actions described herein violated Jose Mendez's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Jose Mendez to unreasonable searches and seizures of his person.

33.    At the time Jose Mendez was shot and killed, he was not engaging in any assaultive or threatening conduct. Under the totality of the relevant circumstances that existed, Jose Mendez posed no danger or threat to Defendants MERIDA and WAGNER, or anyone else. The shooting and killing of Jose Mendez was unreasonable under the circumstances in every respect.

34.    These actions violated Jose Mendez's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

35.    The violation of Jose Mendez's Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by LOS ANGELES of subjecting private citizens to unreasonable searches and seizures in violation of the Fourth Amendment to the United States.

36.    Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

37.    The unauthorized, unwarranted killing of Jose Mendez was willful and done with a deliberate disregard for the rights and safety of Jose Mendez, and therefore warrants the imposition of punitive damages as to Defendants MERIDA and WAGNER.

38.    After being shot by Defendants MERIDA and WAGNER, Jose Mendez endured great physical and emotional pain and suffering.

39.    Accordingly, Defendants MERIDA and WAGNER are liable to Plaintiff for compensatory damages pursuant to 42 U.S.C. § 1983.

## SECOND CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Customs and Practices**

**42 U.S.C. § 1983**

**As Against Defendant CITY OF LOS ANGELES,**

**LOS ANGELES POLICE DEPARTMENT and DOES 1 through 10**

40.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

41.    On and before February 6, 2015, and prior to the killing of Jose Mendez, Defendants LOS ANGELES, LAPD and Does 1 through 10, and each of them, were aware that LAPD police officers, including Defendants MERIDA and WAGNER, had engaged in a custom and practice of callous and reckless use of firearms and other misconduct, as summarized in the paragraphs above.

42.    Defendants LOS ANGELES, LAPD and Does 1 through 10, and each of them, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs, and of persons in Jose Mendez's class, situation and comparable position in particular, knowingly maintained, enforced and applied customs and practices of:

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

a.  Encouraging, accommodating, or ratifying the shooting of residents;

b.  Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force;

c.  Encouraging, accommodating, or facilitating a "code of silence" among LAPD officers/supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up;

d.  Employing and retraining, as police officers and other personnel, including individuals such as Defendants MERIDA and WAGNER, who said Defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating members of the public;

e.  Inadequately supervising, training, and disciplining LAPD police officers, including Defendants MERIDA and WAGNER, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f.  Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers;

g.  Assigning police officers with known histories of misconduct, including criminal conduct, in accord with LAPD custom of assigning these police officers to come into contact with members of the public;

h.  Ratifying wrongful conduct by police officers and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; and

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1       i.    Failing to discipline, investigate and take corrective actions against

2            LAPD police officers for misconduct, including, but not limited to,

3            unlawful detention, excessive force and false reports.

4       43.    Further, the City of Los Angeles, the LAPD and DOES 1 through 10,

5   also had in place a custom and practice of disregarding those official policies related

6   to self-monitoring equipment and of failing to implement the use of self-monitoring

7   equipment. Such custom and practice manifested itself through the following acts

8   and omissions of the present defendants:

9       a.    Allowing patrol officers to destroy self-monitoring equipment, including

10          the failure of said defendants to pursue any discipline against the officers

11          of the Southeast Division after they engaged in a systematic effort to

12          dismantle and or tamper with in-car video recording equipment that was

13          intended to record their activities in the field. Said tampering consisted

14          of the removal and destruction of antennas from police cars to as to

15          impair or otherwise limit the effectiveness of video and audio recording

16          equipment in said patrol cars. Although the present defendants touted

17          this equipment as being a great deterrent to police misconduct, they

18          refused to discipline the offending officers who removed approximately

19          72 antennas from LAPD/Southeast Division patrol vehicles and

20          approximately 20 antennas from patrol vehicles in other LAPD

21          divisions. The removal of the antennas allowed the officers to undertake

22          their police work without being monitored by the cameras and radio

23          equipment and allowed them to conceal their activity. The removal of

24          the antennas and the incapacitation of this monitoring equipment was

25          intentional. Upon learning of this deliberate large-scale practice by the

26          Southeast Division officers and other officers, the present defendants

27          concealed this misconduct from the LAPD police commission. Further,

28

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

said defendants refused to discipline the officers involved in such misconduct.  By failing to conduct an investigation to determine who were the offending officers who destroyed the antennas, said defendants ratified their conduct and allowed the custom and practice of disregarding self-monitoring equipment to continue in the LAPD.  Also, by failing to identify the officers who had tampered with the antennas as described herein, the present defendants encouraged LAPD officers to continue to disregard the implementation of other self-monitoring equipment.

b.   Encouraging, accommodating, or ratifying the custom and practice of LAPD police officers to refuse to activate their department-issued body worn video devices (i.e., body cameras) before initiating any investigative or enforcement activity with the public or "as soon as it is practical and safe to do so" as required by the Los Angeles Police Department Policy: "Body Worn Video Procedures."

c.   Encouraging, accommodating, or ratifying the custom and practice of LAPD police officers to deliberately fail to active their department-issued body cameras, as evidenced by the Los Angeles Board of Police Commissioners' critique of the Los Angeles Police Department during the Board's Regular Meeting on March 28, 2017 regarding the reoccurring failure of officers to activate the their body cameras.  This, despite the great frustration of the Police Commission with the LAPD's failure to review cases in which police officers used force and did not activate their cameras.

d.   Inadequately supervising, training, retraining and disciplining LAPD police officers, including Defendants MERIDA and WAGNER, who willfully failed to active their department-issued body cameras during

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

the incident involving Jose Mendez on February 6, 2015, particularly the officer who was no longer in the 90-day grace period and who had been trained to use the body camera device five months prior to shooting and killing Jose Mendez.

44.   By reason of the aforementioned customs and practices, Plaintiffs were severely injured and subjected to pain and suffering as alleged above in the First Claim for Relief.

45.   Defendants LOS ANGELES, LAPD and Does 1 through 10, with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condoned, tolerated and through actions and inactions thereby ratified such customs and practices.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

46.   Plaintiffs are informed and believe and thereon allege that Defendants MERIDA and WAGNER each had a history and propensity for acts of the nature complained of herein and manifested such propensity prior to and during their employment and/or agency with Defendant LOS ANGELES. Plaintiffs are further informed and believe and thereon allege that Defendants LOS ANGELES, LAPD, and Does 1through 10, knew, or in the exercise of reasonable care should have known, of such prior history and propensity at the time such individuals were hired and/or during the time of their employment. These Defendants' disregard of this knowledge and/or failure to adequately investigate and discover and correct such facts caused the violation of Plaintiffs' constitutional rights.

47.   The policies, practices, and customs implemented and maintained and still tolerated by Defendants LOS ANGELES, LAPD and Does 1 through 10, and

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  each of them, were affirmatively linked to and were a significantly influential force

2  behind the injuries of Plaintiffs.

3       48.    By reason of the aforementioned acts and omissions, Jose Mendez was

4  shot and killed by Defendants MERIDA and WAGNER.

5       49.    Accordingly, Defendant LOS ANGELES is liable to Plaintiffs for

6  compensatory damages pursuant to 42 U.S.C. § 1983.

7  **THIRD CLAIM FOR RELIEF**

8  **Interference with Familial Integrity**

9  **Substantive Due Process Violation**

10  **42 U.S.C. § 1983**

11  **As Against Defendants CITY OF LOS ANGELES, LOS ANGELES**

12  **POLICE DEPARTMENT, JOSUE MERIDA, JEREMY WAGNER,**

13  **and DOE Defendants 1 through 10**

14       50.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set

15  forth herein.

16       51.    The substantive due process clause of the Fourteenth Amendment to the

17  United States Constitution guarantees all persons the right to be free from unlawful

18  state interference with their familial relations. 42 U.S.C. § 1983 provides a private

19  right of action for conduct which violates this right.

20       52.    On or about February 6, 2015, at approximately 10:45 p.m., Jose

21  Mendez was driving a vehicle along Lorena Street in the Boyle Heights district of

22  Los Angeles.  Officer MERIDA and Officer WAGNER observed Jose Mendez

23  traveling along Lorena Street, and proceeded to conduct a traffic stop.  A vehicle

24  pursuit ensued.  The vehicle pursuit ended when Jose Mendez parked the vehicle in a

25  driveway located near the intersection of 6th Street and Lorena Street in the City of

26  Los Angeles. Jose Mendez opened the driver's side door and was in the process of

27  complying with the officers' commands when Officer MERIDA and Officer

28

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  WAGNER fired 19 rounds of ammunition at Jose Mendez's face, back, chest and

2  legs.

3      53.    As alleged above, the shooting and killing of Jose Mendez was

4  unreasonable under the circumstances of the encounter between Jose Mendez and

5  Defendants MERIDA and WAGNER.  As such, the shooting and killing of Jose

6  Mendez violated the constitutional limits on police use of deadly force in violation of

7  the Fourth Amendment's limits on unreasonable seizures.

8      54.    At the same time, the shooting and killing of Jose Mendez by

9  Defendants MERIDA and WAGNER violated the rights of Plaintiffs JUAN

10  MENDEZ and JOSEFINA MENDEZ to be free from police interference in their

11  relationship with Jose Mendez.

12      55.    The unreasonable conduct of Defendants MERIDA and WAGNER was

13  the direct and proximate cause of the death of Jose Mendez. As a result of the

14  unreasonable conduct of Defendants MERIDA and WAGNER, Plaintiffs lost Jose

15  Mendez, as well as his love, affection, society and moral support.

16      56.    The unreasonable conduct of these Defendants was willful and done

17  with a deliberate disregard for the rights and safety of Jose Mendez and the present

18  Plaintiffs and therefore warrants the imposition of punitive damages as to Defendants

19  MERIDA and WAGNER.

20      57.    Accordingly, Defendants CITY LOS ANGELES and DOES 1 through

21  10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

22  ///

23  ////

24  ////

25  ////

26  ////

27  ////

28

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# FOURTH CLAIM FOR RELIEF

## ASSAULT & BATTERY

**As Against Defendants JOSUE MERIDA, JEREMY WAGNER,**

**CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT**

**and DOE Defendants 1 through 10**

58.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

59.    This cause of action arises under the general laws and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements.

60.    Defendants MERIDA and WAGNER assaulted and battered Jose Mendez, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Jose Mendez by unreasonably and unjustly shooting and killing Jose Mendez.

61.    These acts were undertaken by Defendants MERIDA and WAGNER intentionally and without justification.

62.    As a result of these deliberate and unjustified acts undertaken by Defendants MERIDA and WAGNER, Jose Mendez endured great physical and emotional pain and suffering.

63.    These deliberate and unjustified acts undertaken by Defendants MERIDA and WAGNER were willful and done with a deliberate disregard for the rights and safety of Jose Mendez and, therefore, warrant the imposition of punitive damages as to Defendants MERIDA and WAGNER.

64.    Defendants CITY LOS ANGELES and LOS ANGELES POLICE DEPARTMENT are liable to Plaintiffs for the acts of their public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  to the doctrine of *respondeat superior*, codified at California Government Code §
2  815.2.

### FIFTH CLAIM FOR RELIEF

### WRONGFUL DEATH

**As Against Defendants JOSUE MERIDA, JEREMY WAGNER,**

**CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT and**

**DOE Defendants 1 through 10**

8  65.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set
9  forth herein.
10  ///
11  ///

12  66.    This cause of action arises under the general laws and Constitution of the
13  State of California.  Plaintiffs have complied with the California Tort Claims Act
14  requirements.

15  67.    Defendants MERIDA and WAGNER, while working as police officers
16  of the LAPD, and acting within the course and scope of their duties, employed
17  negligent tactics and intentionally and/or without due care shot Jose Mendez.  The
18  shooting resulted as a result of Defendants MERIDA and WAGNER's unsafe,
19  improper and negligent tactics.  As a result of these intentional acts and negligence,
20  Jose Mendez suffered serious injuries and lost his life.  Defendants MERIDA and
21  WAGNER had no legal or reasonable justification for their actions.

22  68.    As a direct and proximate result of the conduct of Defendants MERIDA
23  and WAGNER, Jose Mendez lost his life.  Plaintiffs have been deprived of the life-
24  long love, affection, comfort, and society of Jose Mendez, and will continue to be so
25  deprived for the remainder of their natural lives.  Plaintiffs were further caused to pay
26  funeral and burial expenses as a result of the conduct of Defendants MERIDA and
27  WAGNER.

28

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

69.    Defendants CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT are vicariously liable for the wrongful, intentional and/or negligent acts of Defendants MERIDA and WAGNER, and DOES 1 through 10, pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SIXTH CLAIM FOR RELIEF

### Civil Rights Violations (Cal. Civ. Code § 52.1)

**As Against Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, JOSUE MERIDA, JEREMY WAGNER and DOE Defendants 1 through 10**

70.    Plaintiff ESTATE OF JOSE MENDEZ realleges and incorporates the foregoing paragraphs as if set forth herein.

71.    This cause of action arises under the general laws and Constitution of the State of California, including California Civil Code § 52.1 and California Government Code §§820 and 815.2.  Plaintiff ESTATE OF JOSE MENDEZ has complied with the California Tort Claims Act requirements.

72.    As a result of the conduct of Defendants JOSUE MERIDA and JEREMY WAGNER, and DOES 1 through 10, by the use of threats, intimidation, and coercions, interfered with Plaintiff ESTATE OF JOSE MENDEZ's exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and their rights under California Civil Code § 52.1.

73.    The California Civil Code § 52.1(b) authorizes a private right of action for damages to any person whose constitutional rights are violated. Moreover, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

74.     Defendants' actions as alleged herein violated Plaintiff ESTATE OF JOSE MENDEZ's constitutional rights against unreasonable searches and seizures and rights to familial association, all of which are protected by the Constitution of the State of California.

75.     As a proximate result of the acts of these Defendants, and each of them, Jose Mendez was made to lose his life without cause or justification.

76.     All of the above acts and omissions of Defendants JOSUE MERIDA and JEREMY WAGNER were wilful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages as to these Defendants.

77.     Defendants JOSUE MERIDA, JEREMY WAGNER, CITY OF LOS ANGELES and LOS ANGELES POLICE DEPARTMENT, and each of them, for their respective acts and violations pleaded herein above, are liable to Plaintiff ESTATE OF JOSE MENDEZ for damages, penalties and attorneys' fees as provided in California Civil Code § 52.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

A.     For compensatory damages, including pre-death pain and suffering damages, general damages and special damages, and statutory damages for violation of the laws and Constitution of the United States and State of California, in an amount to be determined at trial;

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

        B.      For punitive damages against Defendants JOSUE MERIDA and

JEREMY WAGNER pursuant to 42 U.S.C. § 1983, and any other applicable laws or

status, in an amount sufficient to deter and make an example of each non-government

entity Defendant;

        C.      For prejudgment interest to be determined at trial;

///

///

        D.      For reasonable costs of this suit and attorneys' fees, including

attorneys' fees pursuant to 42 U.S.C. § 1988; and

        E.      For such further other relief as the Court may deem just, proper, and

appropriate.


Dated: August 7, 2017                    CASILLAS & ASSOCIATES


                                         By */s/ Arnoldo Casillas*
                                         ARNOLDO CASILLAS
                                         DENISSE O. GASTÉLUM
                                         Attorneys for Plaintiffs, ESTATE OF JOSE
                                         MENDEZ, by and through successors in
                                         interest, Juan Mendez and Josefina Mendez;
                                         JUAN MENDEZ, individually; JOSEFINA
                                         MENDEZ, individually

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF JOSE MENDEZ, by and through successors in interest, Juan Mendez and Josefina Mendez, JUAN MENDEZ, individually, JOSEFINA MENDEZ, individually, hereby demand trial by jury.

Dated: August 7, 2017                    CASILLAS & ASSOCIATES

By */s/ Arnoldo Casillas*
ARNOLDO CASILLAS
DENISSE O. GASTÉLUM
Attorneys for Plaintiffs, ESTATE OF JOSE MENDEZ, by and through successors in interest, Juan Mendez and Josefina Mendez; JUAN MENDEZ, individually; JOSEFINA MENDEZ, individually

**FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**